INDUSTRIAL TECTONICS, INC.,
Plaintiff–Appellant,

v.

AERO ALLOY, a California corporation; Die Cast Products, Inc., a California corporation, aka Metal Products Group, Defendants–Appellees.

No. 86–6705.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1990.

Decided Aug. 29, 1990.

Mark Schaeffer, Augustini, Wheeler & Dorman, Los Angeles, Cal., for plaintiff-appellant.

Margot A. Metzner, Hufstedler, Miller, Kaus & Beardsley, Los Angeles, Cal., for defendants-appellees.

Before NELSON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant Industrial Tectonics, Inc. ("ITI"), a Michigan corporation, brought this action in federal district court against appellees Die Cast Products, Inc. ("DCPI"), a California corporation, and Aero Alloys ("Aero"), a California corporation. ITI alleged diversity jurisdiction. The district court dismissed ITI's action, finding that ITI's principal place of business was California, and that diversity jurisdiction did not exist. We affirm.

### STATEMENT OF FACTS

ITI is incorporated under the laws of the State of Michigan and owned by three individual stockholders, each of whom resides in Michigan.[1] Additionally, ITI's corporate headquarters are located primarily in Michigan.[2]

---

1. Because the existence of diversity jurisdiction depends on the citizenship of the parties at the commencement of the action, *Mann v. City of Tucson*, 782 F.2d 790 (9th Cir.1986), this opinion states the facts as they existed in 1981, when appellants brought this action.

2. Although most corporate officers reside in Michigan, some management activities apparently take place in California. According to the Affidavit of ITI Stockholder and President Helmut F. Stern in support of jurisdiction, the corporate vice president who manages the California plant resides in California. Additionally, a California based personnel manager handles employment matters relating to the hourly employees in California.

ITI manufactures high precision ball and roller bearings. Many of the bearings are used for the control rods of nuclear reactors.

ITI conducts its manufacturing operations in two plants. One plant, located in Michigan, manufactures balls. The other plant, located in California, manufactures bearings, including both ball bearings and roller bearings. The Michigan plant supplies the California plant with balls used to manufacture ball bearings. However, the California plant makes its own rollers for use in roller bearings.

The California plant is larger than the Michigan plant. The California plant accounts for more than 61% of ITI's fiscal sales, measured in dollars, and more than 69% of its operating income. The California plant also accounts for more than 64% of ITI's receivables and more than 75% of its inventories. More than 63% of the corporation's equipment is located in California. The net book value of the California plant is $1,780,290, as compared with $938,-784 for the Michigan plant. Although each plant employs approximately the same total number of people, the California plant employs more than 56% of the hourly employees, presumably those involved in actual production. Of the nearly $400,000 paid in wages, more than 53% is paid to California employees.

On August 26, 1981, ITI filed its complaint against DCPI and Aero in the district court for the Central District of California. The district court, sua sponte, raised the issue of diversity jurisdiction and questioned ITI's assertion that its principal place of business was in Michigan. Because DCPI and Aero are California corporations, diversity jurisdiction would not exist if ITI's principal place of business were California.

At the district court's request, ITI submitted affidavits on the jurisdictional issue. All parties also submitted legal briefs.

The district court dismissed the case for lack of diversity jurisdiction, finding that ITI's "activities in California clearly exceed all of the activities in Michigan" and that ITI's activities in Michigan are "substantially ... related to [ITI's] California activities." The district court entered its order of dismissal on November 6, 1986. On December 3, 1986, ITI appealed to this court.

## ANALYSIS

For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c) (West 1989). The party asserting jurisdiction has the burden of proving all jurisdictional facts. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Fenton v. Freedman*, 748 F.2d 1358, 1359, n. 1 (9th Cir.1984).

Defendants-appellees DCPI and Aero are both California citizens because they are incorporated in California. ITI is not incorporated in California. Thus, ITI can establish federal diversity jurisdiction by proving that California is not its principal place of business.

Federal courts generally use one of two tests for locating a corporation's principal place of business. *See* 1 J. Moore, Moore's Federal Practice ¶ 0.77[3] (2d ed. 1989). Under the "nerve center test," developed in *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959), a corporation's principal place of business is where its executive and administrative functions are performed. Under the "place of operations test," developed in *Inland Rubber Corp. v. Triple A Tire Service, Inc.*, 220 F.Supp. 490, 496 (S.D.N.Y.1963), the principal place of business is the state which "contains a substantial predominance of corporate operations." [3] *See Co-*

---

**3.** These two tests can be viewed as particular applications of a general rule that the "bulk of corporate activity," as evidenced by operating, administrative, and management activities, determines a corporation's principal place of business. *See* 1 J. Moore, *supra;* 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3625 at 625 (1984). If the cases are viewed in this manner, they simply indicate that courts should sometimes give greater weight to the corporate "nerve center" and sometimes give greater weight to the "place of operations."

*Efficient Energy Systems v. CSL Industries*, 812 F.2d 556, 558 (9th Cir.1987).

The primary issue in this case is which of the above tests should be used to determine ITI's principal place of business. A decision on this issue requires an examination of the two separate lines of cases cited by the parties.

The first line of cases holds that, where a corporation conducts "substantially all" of its operations in one state and its headquarters are located in another state, the state of operations is the corporation's principal place of business. *See Bialac v. Harsh Bldg. Co.*, 463 F.2d 1185, 1186 (9th Cir.1972), *cert. denied*, 409 U.S. 1060, 93 S.Ct. 558, 34 L.Ed.2d 512 (1972); *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405, 416 (N.D.Cal.1970). In dismissing ITI's action, the district court relied on *Bialac* and *Lurie*. However, as ITI correctly points out, both *Bialac* and *Lurie* are distinguishable from the present case. In both *Bialac* and *Lurie*, the corporation conducted essentially *all* of its business in one state. In contrast, although ITI conducts the majority of its business in California, it conducts more than one-third of its business in Michigan, where its headquarters are located. Thus, neither *Bialac* nor *Lurie* directly governs this case.

The second line of cases holds that, where a corporation conducts business in many states, and does not conduct a substantial predominance of its business in any single state, the state where the corporate headquarters are located is the corporation's principal place of business. As appellees point out, all of these cases are distinguishable from the present case.

In *Egan v. American Airlines, Inc.*, 324 F.2d 565 (2d Cir.1963), the Second Circuit applied the "nerve center" test in holding that American Airlines principal place of business was New York. In *Egan*, however, American Airlines did not conduct a majority of its activities in *any* state, and conducted substantial operations in many states. *Id.* at 566. The *Egan* court was

forced to use the "nerve center" test because appellants could not "point to any single state which should be more properly regarded as American's principal place of business." *Id.* By contrast, appellees in the present case have demonstrated that a majority of ITI's business takes place in California, and that ITI conducts business in only two states.

Similarly, in *Riggs v. Island Creek Coal Co.*, 542 F.2d 339 (6th Cir.1976), and *United Nuclear Corp. v. Moki Oil & Rare Metals Co.*, 364 F.2d 568 (10th Cir.), *cert. denied*, 385 U.S. 960, 87 S.Ct. 393, 17 L.Ed.2d 306 (1966), the Sixth and Tenth Circuits focused on the "nerve center" test, but only because there was no state where the majority of corporate operations was conducted. *Riggs*, 542 F.2d at 342; *United Nuclear Corp.*, 364 F.2d at 570. Thus, neither of these cases is relevant to determining ITI's principal place of business.

In short, courts generally assign greater importance to the corporate headquarters when no state is clearly the center of corporate activity, and assign greater importance to the location of the corporate business when substantially all business operations take place in a single state. *See Lurie Co.*, 315 F.Supp. at 411–13. However, no case cited by the parties dictates which test to apply when the corporation has substantial operations in only two states, and the corporate headquarters are located in one of those two states.

In the present case, ITI operations are divided between only two states: California and Michigan. ITI's operations are not so spread out that one must look to the corporate headquarters to find a principal place of business; most corporate activity apparently occurs in California. On the other hand, one cannot say that "substantially all" of the business takes place in California; nearly one-half of the corporation's business takes place in Michigan, and the headquarters are, for the most part, also in Michigan. Thus, existing case law does not expressly require either the "nerve center" test or the "place of operations" test to

Whether one views the two approaches as separate tests or different applications of one test has no practical significance in the present case.

The issue is which approach, whether labeled a "test" or an "application," should be used to determine ITI's principal place of business.

**1094**

ascertain the location of ITI's principal place of business.

 We hold that, where a majority of a corporation's business activity takes place in one state, that state is the corporation's principal place of business, even if the corporate headquarters are located in a different state. The "nerve center" test should be used only when no state contains a substantial predominance of the corporation's business activities.

This application of section 1332(c) is appropriate for several reasons. First, a corporation usually has its greatest contacts with the public where it conducts most of its business, rather than where internal policy decisions are made. Activities such as employment of personnel, purchasing of materials, and sales of goods and services increase local familiarity with the corporation. This local contact alleviates problems with local prejudice against outsiders and justifies consideration of the corporation as a citizen of that state. *See Lurie Co.*, 315 F.Supp. at 414 (diversity jurisdiction grounded on fear of discrimination against outsiders).

Second, suits involving a corporation generally arise from its contacts with the public. Thus, considering a corporation to be a citizen of the state where it has the most public contact and greatest potential for litigation helps reduce the federal court diversity case load, which is a primary goal of the "principal place of business" provision of the diversity statute. *See* 1 J. Moore, Moore's Federal Practice ¶ 0.77[1] and ¶ 0.77[2] (2d ed. 1989); *see also Kelly v. United States Steel Corp.*, 284 F.2d 850, 852 (3d Cir.1960); *Lurie Co.*, 315 F.Supp. at 411.

Third, the diversity statute's legislative history indicates that a corporation's principal place of business generally should be where most business operations are carried out rather than where policy making functions are carried out. *See Inland Rubber Corp.*, 220 F.Supp. at 492–94; C. Wright, A. Miller, & E. Cooper, *supra*, § 3625 at 633; Report of the Judicial Conference of the United States, Committee on Jurisdiction and Venue, 1951, *reprinted in* 1958 U.S.Code Cong. & Admin.News 3114, 3124.

 When quantifying corporate activity to determine a corporation's principal place of business, one must keep in mind that the purpose of diversity jurisdiction is to avoid the effects of prejudice against outsiders. Thus, the principal place of business should be the place where the corporation conducts the most activity that is visible and impacts the public, so that it is least likely to suffer from prejudice against outsiders. *See R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 654 (2d Cir.1979); *Inland Rubber Corp.*, 220 F.Supp. at 495; *Northeast Nuclear Energy Co. v. General Elec. Co.*, 435 F.Supp. 344, 346 (D.Conn.1977); *Messinger v. United Canso Oil & Gas Ltd.*, 80 F.R.D. 730, 735–37 (D.Conn.1978); 1 J. Moore, *supra*, at 717.81. Many factors are relevant to determining the location of the majority of corporate activity and greatest contact with the public. Certainly the location of employees, tangible property, and production activities are relevant factors. Additional relevant factors include the locations where income is earned, purchases are made, and sales take place.

 Using this analysis, the majority of ITI's business clearly takes place in California. ITI's California operations account for 61% of ITI's fiscal sales, 69% of ITI's operating income, 64% of ITI's receivables, and 75% of ITI's inventories. The California plant has a net book value nearly double that of the Michigan plant and contains 63% of ITI's equipment and more than half of ITI's employees. These operations, which employ local people and generate most of ITI's sales, create a visible presence and impact on the public, so that the purposes of diversity jurisdiction would not be served by the exercise of federal jurisdiction in this case.

For the above reasons, the district court correctly held that ITI's principal place of business is California and that diversity jurisdiction does not exist.

AFFIRMED.