**CHINA BASIN PROPERTIES, LTD., Plaintiff,**

v.

**ALLENDALE MUTUAL INSURANCE CO., et al., Defendants.**

**No. C–91–2790 SBA (ENE).**

United States District Court,
N.D. California.

Aug. 17, 1992.

Law Offices of Dennis C. Birkhimer, San Francisco, CA, for plaintiff.

Pillsbury Madison & Sutro, Bernard Zimmerman, Mark Schallert, San Francisco, CA, for defendants Banta Corp. and One Pass, Inc.

## ORDER GRANTING MOTION TO DISMISS

ARMSTRONG, District Judge.

On August 12, 1991, plaintiff China Basin Properties, Inc., ("China Basin") filed the instant complaint in the Superior Court for the State of California, in and for the City and County of San Francisco, against defendant Allendale Mutual Insurance Company ("Allendale"). On August 27, 1991, Allendale removed the action to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1441(b). On January 16, 1992, plaintiff amended its complaint to add Banta Corporation ("Banta") and One Pass, Inc. ("One Pass"), as defendants to this action. Thereafter, China Basin voluntarily dismissed Allendale from this action.

The parties are now before the Court on defendant One Pass' motion to dismiss the complaint on the ground that there is no diversity of citizenship between the parties. After having considered the papers submitted and the arguments of the parties, for the reasons set forth below, the Court grants One Pass' motion to dismiss.

## I.

### BACKGROUND

One Pass, a Delaware corporation, operated a video recording and post-production studio in San Francisco, California. One Pass was a wholly-owned subsidiary of Banta, a Wisconsin corporation. On or about July 23, 1987, China Basin and One Pass entered into a lease agreement for premises located in the China Basin Building located in San Francisco. On June 12, 1991, the leased premises were substantially destroyed by fire. The fire also destroyed much of the equipment and other property owned by One Pass.

After the fire, One Pass moved its business to another location in San Francisco. Cecchetti Depo. at 27:24–28:8, Zimmerman Decl., Ex. C. By September 13, 1991, however, One Pass had decided to cease its business operations. *Id.* at 26:19–22. Thus, by mid-November 1991, all of the video equipment salvaged from the fire had been sold, *id.* at 40:13–24, Antonio Decl., Ex. A, and with the exception of Roy Cecchetti and one other employee, all remaining personnel had been terminated by One Pass, *id.* at 33:6–8. Subsequently, an account manager with "Scan-line" took over responsibility for the details of the winding down, such as tying up loose ends and paying final bills. *Id.* at 67:12–68:9.

At the time of the fire, the premises leased by One Pass were insured under a policy issued by Allendale and obtained by Banta. In mid-November 1991, Banta, on behalf of One Pass, negotiated with Allendale and settled One Pass' property loss damage claim for $6.5 million. Bardack Decl. Ex. A1. ¶¶ 3–5. Allendale subsequently paid $6.5 million in insurance proceeds to Banta, which Banta then credited to One Pass. Cecchetti Depo. at 47:13–15, Antonio Decl., Ex. A.

On January 16, 1992, China Basin filed its first amended complaint in this action which advances claims against Allendale, One Pass and Banta. Plaintiff brings this action to recover the insurance loss proceeds paid to Banta. The crux of plaintiff's complaint is that One Pass breached its lease obligations by failing to name China Basin as an additional insured under the Allendale policy, and that both Banta and One Pass have improperly refused to pay certain insurance proceeds as required by the lease.

On May 21, 1992, One Pass filed the instant motion to dismiss on the ground that there is no diversity between it and China Basin. One Pass contends that the *only* date relevant for the purposes of determining di-

versity in this action is January 16, 1992—the date China Basin filed its first amended complaint and named One Pass as a defendant. One Pass maintains that because it was a defunct corporation as of that date, the Court should consider the state of California as its last principal place of business for diversity purposes. Moreover, because plaintiff China Basin is also a California resident, there is no diversity to support jurisdiction in this Court.

In response, China Basin offers three arguments as to why One Pass should not be considered a resident of California. First, as a defunct corporation, One Pass' citizenship for diversity purposes is determined exclusively by its state of incorporation, Delaware. Second, at the time the amended complaint was filed, the bulk of One Pass' business was being directed by Banta in Wisconsin. Because Banta exercised extraordinary dominion and control over One Pass' affairs, Wisconsin, Banta's principal place of business, is imputed to One Pass. And finally, because One Pass is really the alter ego of Banta, One Pass' citizenship is the same as Banta's.

## II.

## DISCUSSION

### A. Complete Diversity Between the Parties Is Required For Jurisdiction to Attach

▆ Under 28 U.S.C. § 1332, there must be complete diversity of citizenship between all plaintiffs and all defendants. 28 U.S.C. § 1332(a)(1) (1992); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 199, 110 S.Ct. 1015, 1023, 108 L.Ed.2d 157 (1990). A corporation has dual citizenship for purposes of diversity jurisdiction—the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1) (1992).[1] Diversity is determined as of the time of the filing of the complaint. *Co-Efficient Energy Systems v. CSL Indus.*, 812 F.2d 556, 557 (9th Cir.1987). In the case of an amended complaint which joins new parties, however, the diversity must exist at the time of the amendment. *Lewis v. Lewis*, 358 F.2d 495, 502 (9th Cir.1966).

▆ In a diversity case, the burden of proving all jurisdictional facts is on the party asserting jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 7, 80 L.Ed. 1135 (1936); *Fenton v. Freedman*, 748 F.2d 1358, 1359 n. 1 (9th Cir.1984). The diversity statute is strictly construed, and any doubts are resolved against finding jurisdiction. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1092 (9th Cir.1983).

### B. One Pass' Principal Place of Business Was in California

There is a split of authority as to the proper test to determine the citizenship of a defunct or inactive corporation.[2] Some courts look to *both* the state of incorporation and the location of the corporation's *last place* of business activity. *Comtec, Inc. v. National Technical Schools*, 711 F.Supp. 522, 525 (D.Ariz.1989); *Wm. Passalacqua Builders v. Resnick Developers S.*, 608 F.Supp. 1261, 1263 (S.D.N.Y.1985). Other courts, however, look only to the place of incorporation. *Gavin v. Read Corp.*, 356 F.Supp. 483, 486 (E.D.Pa.1973). Recently, the Fifth Circuit adopted a middle ground approach, holding that the place of an inactive corporation's last business activity is relevant, but not dispositive, in determining its principal place of business. *Harris v. Black Clawson Co.*, 961 F.2d 547, 550–51 (5th Cir.1992).[3]

---

1. 28 U.S.C. § 1332(c)(1) provides, in pertinent part, that "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, ..." Congress amended section 1332 in 1958 to add a corporation's principal place of business because:

   The fiction of stamping a corporation on a citizen of the state of its incorporation has given rise to the evil whereby a local institution engaged in a local business and in many cases locally owned is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another state.

   S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.C.C.A.N. 3099, 3101–02.

2. The Ninth Circuit has yet to take a position on this issue.

3. The *Harris* court declined to expand upon how to determine the proper amount of weight that an inactive corporation's last place of business should be given in an assessment of the corporation's "principle" place of business. *Harris*, 961 F.2d 547. Instead, without any explanation or analysis, the court went on to hold that "where a

One Pass relies on *Comtec* for the proposition that it is a citizen of both its state of incorporation, Delaware, and its last principal place of business, California. In *Comtec,* defendant Comtec moved to dismiss the action for lack of diversity jurisdiction. Like One Pass, Comtec was a defunct corporation at the time the complaint was filed.

The *Comtec* court ruled that for purposes of diversity jurisdiction, California, its last principal place of business, would be considered its principal place of business. *Comtec,* 711 F.Supp. at 525. The court rejected the plaintiff's suggestion that when a corporation has ceased its business activity, diversity jurisdiction is determined only by reference to the state of incorporation. *Id.* In reaching its decision, the court reasoned that such a conclusion would be inconsistent with the language of section 1332(c), which expressly states that corporate diversity is based on *both* the place of incorporation *and* principal place of business. *Id.* at 524. The court explained that "[b]y using the conjunction 'and,' Congress intended for all of the requirements of the statute to be fulfilled." *Id.* at 524.[4] The court concluded that the lack of diversity precluded it from asserting jurisdiction over the case, and remanded the action to state court. *Id.* at 525–26; *accord Wm. Passalacqua Builders,* 608 F.Supp. 1261 (cited with approval in *Comtec* ).

Nevertheless, China Basin, without advancing any substantive analysis, contends that this Court should follow *Gavin* instead of *Comtec.* In *Gavin,* plaintiff (a Pennsylvania citizen) brought an action against an out-of-state corporation. The defendant corporation's principal place of business was Pennsylvania; however, it was no longer engaged in any business activity at the time the complaint was filed. *Gavin,* 356 F.Supp. at 486. Since the defendant was an inactive corporation, the court looked only to the corporation's place of incorporation to determine its citizenship, and ruled that there was diversity of citizenship. *Id.* The court premised its analysis on the assumption that a defunct corporation is in the same situation as a corporation which has been granted a charter but has not commenced business. *Id.* Since neither corporation is conducting any business, the court reasoned that only the corporation's place of incorporation is germane for ascertaining the citizenship of the corporation.

■ The problem with *Gavin* is that it is premised upon faulty reasoning—namely, that a defunct corporation should be viewed in the same light as an inactive corporation. Unlike an inactive corporation, a defunct corporation had, at one time, been conducting business. As a result, the defunct corporation has established some connection with the state where it conducted its business. This distinction is significant because diversity jurisdiction serves to avoid the local prejudice of state courts by providing a "neutral" forum for citizens from another state or country. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 111, 65 S.Ct. 1464, 1471, 89 L.Ed. 2079 (1945). Thus, a defunct corporation, by virtue of having engaged in its business operations, is not at risk of being an "alien" in state court.[5]

■ Although *Gavin* clearly supports plaintiff's arguments,[6] the Court believes that *Comtec* is more consistent with the spirit and intent of section 1332. As recognized in *Comtec,* when Congress amended section

corporation has been inactive in a state for a substantial period of time, in this case five years, that state is not the corporation's principal place of business, ..." *Id.* (footnote omitted). In the present case, One Pass has not been inactive for a "substantial period of time." Therefore, *Harris* is of little assistance to the Court.

4. The *Comtec* court further noted that limiting a defunct corporations principal place of business to its place of incorporation fails to comport with Congressional intent. The court stated:

The conclusion that a defunct corporation has no principal place of business also conflicts with the intent of Congress. Under such a

rule, a defunct corporation, no matter how local in character, could remove a case based on its state of incorporation. The clear intent of Congress in enacting the 1958 amendment was to prohibit such maneuvers. *Id.* at 525.

5. Here, China Basin has not averred any reason why it cannot receive a fair hearing in the state court where it initially filed this action. Accordingly, there is no compelling reason to keep this action in this Court.

6. The Court notes that *Gavin* has never been directly followed on this point.

1332 to include a corporation's principal place of business as its state of incorporation through the use of the conjunctive "and," Congress could not have meant that a corporation's citizenship would be its principal place of business *or* its state of incorporation. If Congress intended such a result, it clearly could have expressly stated as such. Since there is nothing in section 1332 to suggest that a corporation's principal place of business should be ignored once that corporation becomes inactive, a strict reading of the statute requires this Court to utilize One Pass' last principal place of business in determining its citizenship.

## C. Banta's Activities in Winding–Down One Pass' Business Do Not Alter One Pass' Principal Place of Business

■ China Basin contends that even if the Court declines to look solely to One Pass' place of incorporation to determine its citizenship, One Pass' principal place of business nonetheless should be considered to be the state of Wisconsin. Specifically, China Basin points to the fact that at the time of the filing of the amended complaint, One Pass was not engaged in revenue-generating activities. In addition, Banta acted on One Pass' behalf by settling the insurance claim and performing other winding-down activities. Thus, by undertaking these tasks on behalf of One Pass, Banta allegedly exercised extraordinary dominion and control over One Pass' corporate activities. China Basin insists that this control transferred One Pass' principal place of business to Wisconsin. Pl.'s Mem. at 6.

As authority for its argument, plaintiff relies on the "principal place of business" test utilized in *Industrial Tectonics, Inc. v. Aero Alloy*[7], 912 F.2d 1090 (9th Cir.1990). In *Industrial Tectonics*, the court held that where a majority of a corporation's business activity takes place in one state, that state is the corporation's principal place of business regardless of the location of the company's headquarters. *Id.* at 1094. Because One Pass' California business was destroyed in the fire, plaintiff argues that, as of the time

of the amended complaint, all of One Pass' business activity was directed from Wisconsin.

*Industrial Tectonics,* however, is distinguishable from the instant case.[8] In *Industrial Tectonics,* the defendant was operating its core business at the time the complaint was filed. *Id.* In contrast, at the time China Basin filed its amended complaint, One Pass had ceased doing business; One Pass had no employees or tangible property, was not earning any income, and did not make any purchases or sales. Moreover, no where in its opposition papers does plaintiff allege that Banta was conducting One Pass' video business. The only activities undertaken by Banta on behalf of One Pass were in the nature of negotiating the insurance settlement. *See* Pl.'s Opp'n at 12. Thus, the Court concludes that Banta's principal place of business should not be attributed to One Pass.

## D. One Pass is Not the Alter Ego of Banta

■ Finally, plaintiff argues that One Pass is the "alter ego" of Banta, and therefore, One Pass' principal place of business is the same as Banta's. Pl.'s Mem. at 12–13. China Basin acknowledges that normally, a parent and its subsidiary corporations are seen as separate entities with separate principal places of business for the purpose of determining the existence of diversity jurisdiction. *See Lurie v. Loew's San Francisco Hotel Corp.,* 315 F.Supp. 405, 410 (N.D.Cal.1970). However, relying on *Adams v. Republic Steel Corp.,* 621 F.Supp. 370, 374 (D.C.Tenn.1985), China Basin claims this action involves two entities which have not maintained their separation, thus rendering the existence of the subsidiary "a mere fiction."

Nevertheless, the *Adams* court cautioned that "creation of diversity jurisdiction is one of the least compelling reasons for disregarding" the separate corporate existence of a subsidiary. *Id.* at 374 (citation omitted). Plaintiff acknowledges that the Fifth Circuit has taken this position, however, it claims

---

**7.** The court in *Industrial Tectonics* explained that the factors to examine in deciding what the corporation's principal place of business are the location of employees, tangible property, and production activities; and the sites where in-

come is earned, purchases are made, and sales take place." *Industrial Tectonics, Inc. v. Aero Alloy,* 912 F.2d at 1094.

**8.** In fact, plaintiff acknowledges this much.

that the Ninth Circuit has not adopted this interpretation. Pl.'s Mem. at 13 n. 2. Unfortunately, plaintiff fails to offer any Ninth Circuit authority to support its position. In addition, the cases which plaintiff does cite caution that the court should pierce the corporate veil only if the corporation does not observe the formalities of corporate separation. *See Cannon Mfg. Co. v. Cudahy Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Leach Co. v. General Sani–Can Mfg. Corp.*, 393 F.2d 183, 186 (7th Cir.1968).

Here, China Basin has failed to adduce any compelling evidence to demonstrate that Banta exercised sufficient dominion over One Pass to render the separation between the two entities a mere fiction. Plaintiff points to the fact that One Pass' leased premises were insured under a policy obtained by Banta (to cover a number of business locations leased by its subsidiaries) and that Banta negotiated the insurance claim settlement with its insurer after the fire establishes a lack of corporate separation. Pl.'s Mem. at 14. China Basin, however, fails to provide any authority to support the notion that the mere fact that a parent corporation handles certain insurance matters on behalf of its subsidiary necessarily infringes on the formalities of corporate separation. Thus, the facts presented by China Basin are insufficient to pierce the corporate veil.[9] *Lurie Co.*, 315 F.Supp. at 410 (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925) ("[w]here the corporate separation between a parent and subsidiary though perhaps merely formal, is real and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through corporate ownership or otherwise.").

### III

### CONCLUSION

The Court finds that One Pass' citizenship for diversity purposes is both Delaware and California. Because China Basin is a California resident, there is no diversity of citizenship between the parties. Therefore, this Court is without jurisdiction to hear plaintiff's claims against One Pass. Accordingly,

IT IS HEREBY ORDERED THAT:

(1) Defendant One Pass's motion to dismiss be GRANTED.

(2) The above-captioned matter be REMANDED to the Superior Court for the State of California, in and for the City and County of San Francisco. The Clerk of this Court shall mail a certified copy of this order to the clerk of the state court from which this case was removed.

(3) Plaintiff's request to amend its complaint to allege the citizenship of its partners, and the state of One Pass' principal place of business is DENIED.

IT IS SO ORDERED.

---

9. Plaintiff's assertion is further weakened by the fact·that plaintiff's amended complaint distinguished between those claims asserted against Banta and One Pass. One Pass is sued only on the seventh and eighth causes of action while Banta is sued only on the ninth through twelfth causes of action. One Pass' Reply Mem. at 6. Therefore, at the time plaintiff filed its amended complaint, plaintiff ostensibly viewed the two entities as separate and independent. One Pass' Reply Mem. at 6.