**TOSCO CORPORATION, a Nevada corporation, Plaintiff–Appellant,**

v.

**COMMUNITIES FOR A BETTER ENVIRONMENT, a California non-profit corporation; Does 1 through 50, Defendants–Appellees.**

No. 99–55400.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2000

Filed Jan. 2, 2001

Gregory N. Pimstone, Los Angeles, California, for the plaintiff-appellant.

Jonathan Weissglass, Fred H. Altshuler, Altshuler, Berzon, Nussbaum, Rubin & Demain, San Francisco, California, for the defendants-appellees.

Before: D.W. NELSON, BRUNETTI and KOZINSKI, Circuit Judges.

PER CURIAM.

Tosco Corporation ("Tosco") claims that the district court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because, under the "nerve

center" test, its principal place of business is Connecticut. But we apply the "place of operations" test when a corporation conducts a substantial predominance of its business activities within a state. *See Industrial Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1094 (9th Cir.1990); *see also Montrose Chem. Corp. v. American Motorists Insur. Co.,* 117 F.3d 1128,1135 (9th Cir.1997) (district court abused its discretion in sanctioning law firm because a state arguably contained a substantial predominance of the corporation's business activity and firm's assertion of principal place of business was not completely baseless). The district court found that a substantial predominance of Tosco's business activities are conducted in California and, therefore, that California is Tosco's principal place of business. We affirm the district court's judgment dismissing Tosco's complaint for lack of subject matter jurisdiction, and adopt the district court's opinion, *Tosco Corp. v. Communities for a Better Env't,* 41 F.Supp.2d 1061 (C.D.Cal.1999), as our own. *See* Appendix *infra.*

**AFFIRMED.**

### ATTACHMENT

### APPENDIX

TEVRIZIAN, District Judge.

### I. Background

**A. Factual Summary**

This action is brought by Plaintiff Tosco Corporation ("Plaintiff"), a Nevada Corporation, against Defendant Communities for a Better Environment ("Defendant"), a California non-profit Corporation, for (1) slander, (2) libel, (3) malicious prosecution, and (4) equitable relief. Plaintiff asserts that this Court has subject matter jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

Plaintiff's claims arise from two previous lawsuits initiated by Defendant against Plaintiff for alleged violations of federal and state environmental laws. First, Plaintiff alleges that Defendant's statements and conduct during a July 1997 lawsuit constitute libel, slander, and malicious prosecution. On July 23, 1997, Defendant filed a lawsuit in this Court against Plaintiff and several other oil companies for violating the Clean Air Act. *See* Declaration of R. Drury in Support of Defendant's Motion to Dismiss, Exhibit B (Defendant's July 23, 1997 Clean Air Act Complaint against Tosco). Defendant's Complaint alleged that Plaintiff was excessively polluting the air during oil tanker loading at its Wilmington, California Marine Terminal Facility ("Marine Terminal Facility") in violation of South Coast Air Quality Management District ("SCAQMD") Rule 1142, which requires reduced air emissions. *See id.* Specifically, Defendant's Complaint asserted that Plaintiff was improperly attempting to avoid compliance with the Rule 1142 emissions standard by offsetting its emissions at the Marine Terminal Facility with "pollution credits" obtained by scrapping old cars under SCAQMD Rule 1610. *See id.*

Defendant held highly-publicized media events in conjunction with the initiation of the July 23, 1997 action. *See* Plaintiff's First Amended Complaint, General Allegations, pp. 5–14. Plaintiff contends that, at these events, Defendant issued public oral and written statements that accused Plaintiff of "environmental injustices" and "environmental racism" by scrapping cars, which formerly emitted pollution over more dispersed and affluent areas, and using the resulting "pollution credits" to offset higher-than-permitted emissions at and around its Marine Terminal Facility, which is surrounded by low income and minority communities. *See id.*

Plaintiff contends that Defendant's public statements were completely false because Plaintiff "did not apply any such emission reduction credits towards compliance with SCAQMD Rule 1142 for the Marine Terminal Facility." *Id.* at p. 14. Therefore, Plaintiff alleges Defendant's

statements constitute libel and slander. *See id.* at First Cause of Action, p. 2, Second Cause of Action, p. 2. Additionally, Plaintiff claims that Defendant's action constitutes malicious prosecution because the "[l]awsuit was initiated with malice" by Defendant, who knew the charges were false or had no reason to believe they were true. *See id.* at Third Cause of Action, pp. 5–7.

On August 8, 1997, two weeks after the initiation of the Clean Air Act lawsuit against Plaintiff, Defendant voluntarily dismissed its action before ever serving Plaintiff with its Complaint. *See* Declaration of R. Drury in Support of Defendant's Motion to Dismiss, Exhibit C (Notice of Voluntary Dismissal, dated August 8, 1997). On January 23, 1998, Defendant added Plaintiff to a separate Clean Air Act SCAQMD Rule 1142 action pending in this Court against the Unocal Corporation (CV 97–5414 DT (BQRx)), who was the prior owner of the Marine Terminal Facility. *See* Declaration of R. Drury, Exhibit D (Plaintiff's (CBE) First Amended Complaint, dated 23 January, 1998). The lawsuit alleged that both Plaintiff and Unocal, as the present and past owners of the Marine Terminal Facility, violated Rule 1142, but Defendant deleted its allegations that Plaintiff was scrapping cars to avoid compliance with Rule 1142. *See id.* Defendant later voluntary dismissed Plaintiff from the Rule 1142 lawsuit altogether.[1]

Plaintiff asserts additional claims of libel and slander against Defendant as a result of statements that Defendant made during a second lawsuit initiated against Plaintiff in state court. On August 6, 1998, Defen-

dant filed suit in San Francisco County Superior Court against Plaintiff and several other oil companies for illegally polluting California's drinking water with the gasoline additive methyl butyl tertiary ether (MTBE). *See* Defendant's Motion to Dismiss, p. 4; Declaration of R. Drury in Support of Defendant's Motion to Dismiss, Exhibit K.

Plaintiff alleges that, in oral and written statements made to the press in conjunction with this lawsuit, Defendant "falsely and maliciously, with broad, vague allegations, accused [Plaintiff] of knowingly sacrificing the health of the citizens of this State through the addition of MTBE to gasoline, and then engaging in a scam to cover it up." Plaintiff's First Amended Complaint, General Allegations, p. 33. Plaintiff contends that one example of Defendant's false accusations is Defendant's executive director's statement to a variety of media outlets, including the San Francisco Examiner, that "[o]il companies have been running the same kind of scam the tobacco companies did for years, only it was MTBE instead of nicotine." *Id.* at p. 34. Plaintiff believes the reasonable implication of Defendant's statements is that Plaintiff is intentionally harming the public by engaging in a "scam" to cover up its use of MTBE as a gasoline additive and to cover up the adverse health effects of MTBE. *See id.*

Plaintiff contends that Defendant's public statements are defamatory because Plaintiff was not engaged in a scam to cover up its use and the dangers of MTBE. *See id.* at pp. 36–37. On the contrary, Plaintiff claims that refineries are

---

1. On March 30, 1998, this Court granted Plaintiff and Unocal's Motion to Dismiss this second suit without prejudice because Defendant failed to comply with the notice requirements of the Clean Air Act. *See* Declaration of R. Drury in Support of Defendant's Motion to Dismiss, Exhibit E. On June 25, 1998, Defendant filed a new Complaint with this Court against Plaintiff and Unocal alleging the same Rule 1142 violations (CV 98–05175(DT)). *See id.* at Exhibit F. On July 21, 1998, Plaintiff filed an Answer to this third suit. *See id.* at Exhibit G. On August 31, 1998, this Court approved a Stipulated Dismissal of Plaintiff with Prejudice. *See id.* at Exhibits I and J. Defendant stipulated the dismissal of Plaintiff because Plaintiff established it had not conducted any loading activities at the Marine Terminal since May 3, 1997, prior to the initiation of all Defendant's Rule 1142 actions against Tosco. *See id.*

forced to use oxygenates, the principal one being MTBE, to meet the stringent emission standards of the Clean Air Act. Moreover, Plaintiff asserts that, "contrary to other California refineries, [Plaintiff] publicly and visibly advocated and supported the reduced use or elimination of MTBE in gasoline" and is actively studying alternatives to MTBE due to MTBE's potential threat to drinking water. *See id.* at p. 26. Plaintiff argues that Defendant knew of Plaintiff's leadership in the elimination of MTBE as a gasoline additive and, nonetheless, made the aforementioned false and misleading statements to the public. *See id.* at p. 33.

## B. Procedural Summary

On July 21, 1998, Plaintiff filed its Complaint with this Court alleging (1) libel, (2) slander, and (3) malicious prosecution. On October 23, 1998, Plaintiff filed its First Amended Complaint alleging the same claims and requesting equitable relief.

On December 28, 1998, Defendant filed its Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which is currently before this Court.

## II. Discussion

### A. Standard

Federal Rule of Civil Procedure 12(b)(1) allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction. A federal court has subject matter jurisdiction over an action that either arises under federal law, or when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a) (West 1998). When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *See Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.

1989). "A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough*, 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682 (1926).

### B. Analysis

Plaintiff filed its action in this Court based upon federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff is incorporated in Nevada and alleges that its principal place of business is Stamford, Connecticut. Defendant contends that this Court must dismiss this case for lack of subject matter jurisdiction because there is no diversity of citizenship between the parties. *See* Defendant's Motion to Dismiss, p. 5.

Subject matter jurisdiction based upon diversity of citizenship requires that no defendant have the same citizenship as any plaintiff. In determining whether there is diversity between corporate parties, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Thus, corporations are citizens of both the state where they are incorporated and the state where they have their principal place of business.

Defendant claims that both Plaintiff and Defendant are corporate citizens of California, and, therefore, they are not diverse parties who can invoke federal jurisdiction. *See* Defendant's Motion to Dismiss, p. 5. Specifically, Defendant asserts that Plaintiff's principal place of business is California and not Connecticut. *See id.* at p. 7. Therefore, Plaintiff has the burden of proving that its principal place of business is in Connecticut, or in a state other than California, to survive Defendant's Motion to Dismiss.

Federal courts generally use one of two tests to determine a corporation's principal place of business. First, the "place of operations test" locates a corporation's principal place of business in the state which "contains a substantial predominance of corporate operations." *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir.1990) (quoting *Co–Efficient Energy Systems v. CSL Industries*, 812 F.2d 556, 558 (9th Cir.1987)). Second, the "nerve center test" locates a corporation's principal place of business in the state where the majority of its executive and administrative functions are performed. *See id.* at 1092–93 (citing *Inland Rubber Corp. v. Triple A Tire Service, Inc.*, 220 F.Supp. 490, 496 (S.D.N.Y.1963)). The Ninth Circuit Court of Appeals has given lower courts direction to determine which of these tests to apply: where a majority of a corporation's business activity takes place in one state, that state is the corporation's principal place of business, even if the corporate headquarters are located in a different state. *The "nerve center" test should be used only when no state contains a substantial predominance of the corporation's business activities.* *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d at 1094 (emphasis added). Thus, the Ninth Circuit applies the place of operations test unless the plaintiff shows that its activities do not substantially predominate in any one state.

1. The "Substantial Predominance" of Plaintiff's Business Activity is in California.

Plaintiff's main contention is that neither California, nor any other state, contains the substantial predominance of its business activity, and, therefore, the "nerve center test" is the appropriate test to determine its principal place of business. Plaintiff further asserts that, under the nerve center test, Plaintiff's principal place of business is Stamford, Connecticut.

Plaintiff's argument, however, incorrectly applies the Ninth Circuit's approach in determining a corporation's principal place of business. Specifically, Plaintiff misconstrues what constitutes a "substantial predominance" of business activity within a given state. Plaintiff supports its argument that California does not contain a substantial predominance of its business activities by comparing the percentage of its business activity in California to the combined percentage of its business activity in the rest of the United States. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss, pp. 3–7. Plaintiff offers no evidence of its business activity in any specific state that can reasonably compare to the amount of its operations in California.

Contrary to Plaintiff's view, determining whether a corporation's business activity substantially predominates in a given state plainly requires a comparison of that corporation's business activity in the state at issue to its business activity in other individual states. *See, e.g., Montrose Chemical Corp. v. American Motorists Ins. Co.*, 117 F.3d 1128, 1134–36 (9th Cir.1997) (comparing a corporation's business activity between Nevada and Connecticut); *Industrial Tectonics*, 912 F.2d at 1094 (comparing a corporation's business activity between California and Michigan). Thus, "substantial predominance" does not require the majority of a corporation's total business activity to be located in one state, but instead, requires only that the amount of corporation's business activity in one state be significantly larger than any other state in which the corporation conducts business.

The Ninth Circuit employs a number of factors to determine if a given state contains a substantial predominance of corporate activity, including the location of employees, tangible property, production activities, sources of income, and where sales take place. *See Industrial Tectonics*, 912 F.2d at 1094. Informed by these factors and the parties' pleadings, this

Court finds that Plaintiff has failed to show that no state contains a substantial predominance of its business activities. Rather, the evidence shows that the substantial predominance of Plaintiff's business activity is in California.

#### a. Employees

Plaintiff asserts that "[o]nly 21 percent of Tosco's employees are located in California" and that the remainder of its employees are "in states other than California." Opposition to Defendant's Motion to Dismiss, p. 3. Plaintiff, however, fails to identify any other state containing a comparable number of its employees.[2]

#### b. Refineries

Plaintiff combines the refining capacity of three of its refineries located in three separate states to argue that over 50 percent of refining capacity is located outside of California, but, again, Plaintiff offers no comparison to its refining assets in other individual states. However, Defendant does provide such a comparison, using Plaintiff's own 1997 Annual Report and Form 10–K. *See* Defendant's Motion to Dismiss, p. 8; Declaration of R. Drury, Exhibits O and P. Five of Plaintiff's eight refineries are located in California; the remaining three are located in separate states. *See id.* at Exhibit P (pp. 310–12). Plaintiff's California refineries have a refining capacity of 420,000 barrels per day, which is over 40 percent of Plaintiff's total refining capacity. *See id.* The state with the next highest refining capacity is New Jersey, where Plaintiff's refinery has a capacity of only 275,000 barrels per day, which is approximately 28 percent of Plaintiff's total capacity. *See id.*

#### c. Lubricant blending and packaging facilities

Plaintiff's "76 Lubricant Company" is based in Costa Mesa, California. *See id.* at Exhibit P (p. 314). Two of Plaintiff's four lubricant blending and packaging facilities are located in California. *See id.* The other two locations are in separate states. *See id.*

#### d. Retail locations

Plaintiff contends that "only 35 percent of Tosco's total retail marketing locations are located in California" and the remainder are located across 33 other states.[3] Opposition, p. 4. Again, Plaintiff failed to show any state-to-state comparison. However, Defendant contends that Plaintiff's 1997 Annual Report clearly shows that the other 33 states each have far fewer retail locations than California. For instance, Plaintiff has 1,872 (37 percent) of its retail locations in California. *See id.* at Exhibit O (p. 260). The state with the next highest number of retail locations is Arizona, with 689 retail locations (14 percent). *See id.*

#### e. Convenience stores

Plaintiff asserts that "Tosco only operates 15 percent of its Circle K convenience stores in California." Opposition, p. 4. Once again, Plaintiff fails to identify another state with a percentage of its convenience stores that can reasonably compare to California.

#### f. Sales and inventory

Plaintiff states that less than one-third of its sales are generated from its California operations but fails to show another state with comparable sales. *See id.* at p.

---

**2.** [The district court's statement is inaccurate. Tosco did in fact present evidence that 24% of its employees work in Arizona compared to 21% in California. However, any error is insignificant because Tosco's presence in California still significantly outweighs its presence in any other state.]

**3.** A Plaintiff attempts to divorce its franchised retail locations for purposes of determining diversity jurisdiction by arguing that "just 14 percent" of its "company operated" retail locations are located in California. This is an unpersuasive position because Plaintiff is still conducting business activity in its franchised locations.

5. Also, Plaintiff contends that only 35 percent of its inventories relate to its operations in California but fails to show another state with comparable inventories. *See id.*

g. Executive and administrative offices

Plaintiff contends that its executive and administrative functions are "plainly located outside of California." *Id.* at p. 6. Plaintiff's principal corporate headquarters is located in Stamford, Connecticut. *See id.* Plaintiff's refining company headquarters is located in Linden, New Jersey, and its marketing headquarters is located in Phoenix, Arizona. *See id.* However, not all of Plaintiff's executive and administrative offices are located outside of California. Plaintiff's lubricant company headquarters is located in Costa Mesa, California. See Declaration of R. Drury, Exhibit P (p. 314).

This Court finds that Plaintiff has failed to show that no state contains a substantial predominance of its corporate operations. In fact, Plaintiff conducts a substantial predominance of its business activity in California. Despite having operations and executive offices in other parts of the United States, Plaintiff's presence in California significantly outweighs its presence in any other state. Therefore, the place of operations test, not the nerve center test, applies to determine Plaintiff's principal place of business, which is California. Accordingly, Plaintiff and Defendant are not diverse parties and cannot, therefore, invoke the subject matter jurisdiction of this Court. The purpose of diversity jurisdiction is to provide "a federal forum for out-of-state litigants where they are free from prejudice in favor of a local litigant." *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 404 (5th Cir.1987). Plaintiff, as a major employer and business operator in California, is not the type of litigant that diversity jurisdiction was designed to protect.

2. Plaintiff Claimed California as Principal Place of Operations in Previous Litigation.

Plaintiff ultimately undermines its own argument that its principal place of business is not in California because Plaintiff claimed that California was its principal place of business to successfully establish diversity jurisdiction in a 1995 case. *See Tosco Corp. v. Sun Co., Inc.*, 1995 WL 165888 (N.D.Cal.1995). Plaintiff now claims that California is no longer its principal place of business because of its corporate restructuring in 1995 and 1996. *See* Opposition, p. 6. Plaintiff contends that, since the 1995 case, it divided its business along functional lines and, consequently, moved its refining headquarters to New Jersey, moved its marketing headquarters to Arizona, and closed its refining administrative offices in California.

Although this Court recognizes a corporation's principal place of business can change due to such restructuring, Plaintiff's structural changes did not alter the aforementioned substantial presence of Plaintiff's employees, refineries, lubricant facilities, retail locations, convenience stores, income, sales, and inventories in California. Thus, as extensively discussed above, Plaintiff continued to conduct substantially more business activity in California than any other state even after its corporate restructuring.

Since Plaintiff's principal place of business is California, this Court lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Accordingly, this Court Grants Defendant's Motion to Dismiss without prejudice for proper refiling in state court.[4]

**IT IS SO ORDERED.**

---

4. Since this Court has found that it lacks subject matter jurisdiction, it does not reach

Defendant's additional arguments that Plaintiff's action should be dismissed, including arguments that Plaintiff's claims are compulsory counterclaims in other lawsuits and fail to state a claim as a result of various First Amendment protections. These issues are more appropriately left for the state court's determination.