Terrance C. PROSCHOLD,
et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Dry Creek Rancheria Band of Pomo
Indians of California,
Intervenor.

No. 4:01–CV–02390.

United States District Court,
N.D. California.

Aug. 13, 2002.

**1028**

Andrea M. Miller, Nageley, Meredith & Miller, Inc., Sacramento, CA, for Plaintiffs Terrance C. Proschold/Larry R. Cadd.

James Coda—Assistant U.S. Attorney, Environment & Natural Resources Unit, San Francisco, CA, for Defendant U.S.A.

Jerome L. Levine, Holland & Knight LLP, San Francisco, CA, for Proposed Intervenors Dry Creek Rancheria Band of Pomo Indians of California.

## ORDER GRANTING DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS FOR LACK OF JURISDICTION

ARMSTRONG, District Judge.

Plaintiffs are the owners of an easement previously granted to defendant United States ("the Government") by plaintiffs' predecessor-in-interest in 1965. The Government obtained the easement to provide access to a Reservation occupied by the Dry Creek Rancheria Band of Pomo Indians of California ("the Tribe"). Plaintiffs bring the instant action against the Government under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, seeking a judicial determination concerning the permissible scope of use of the easement. Their concern arises from the Tribes' construction of a casino on the Reservation and the attendant increased traffic over the easement.

The parties are presently before the Court on the Government and the Tribe's separate motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1). Both motions contend that the Court lacks subject matter jurisdiction over the instant action based on a provision in the QTA which excepts Indian property and property held in trust for Indians from the QTA's waiver of sovereign immunity. Having read and considered the papers filed in connection with the motions, and being fully informed, the Court GRANTS the motions and dismisses the action for lack of jurisdiction.[1]

## BACKGROUND

In the early 1900's, Margaret Drake owned a parcel of property ("the Drake property") located in a rural area of Sonoma County, approximately three miles from the town of Geyserville. The Drake property is adjacent to an Indian Reservation known as the Dry Creek Rancheria, where a small number of Tribe members resided. There are two access roads on different sides of the Reservation. One of the roads was largely unusable during the Winter. However, the Drakes permitted the Tribe to use a road which ran through the Drake property as an alternative means of ingress and egress to the Reservation.[2]

On March 8, 1965, after discussions with a representative from the Bureau of Indian Affairs, Mrs. Drake granted to the Government, for consideration in the amount of $1.00, a permanent easement and right of way across her property for the purpose of formally allowing the Tribe access to the Reservation. The easement was granted

---

1. The instant motions are suitable for disposition without a hearing. Fed.R.Civ.P. 78.

2. The road connects California State Highway 128 to the Dry Creek Rancheria. The easement crosses plaintiffs' parcel of property, which is still used for farming and ranching activities.

solely to the Government and its successors and assigns, and made no reference to the Tribe. Throughout the time period the road was used by the Tribe, no more than forty-five members resided at the Reservation. However, in the last five years, the Tribe population has dwindled to five members.

In early 1999, plaintiffs, successors-in-interest to the Drake property, learned of the Tribe's intention to build a casino on the Reservation and to use the easement as the means for accessing that facility. Alarmed by this prospect, plaintiffs attempted to address the matter informally with the Tribe. After those negotiations proved unsuccessful, plaintiffs commenced the instant action under the QTA against the Government, as owner of the easement. On July 17, 2001, plaintiffs filed a First Amended Complaint for declaratory relief. Plaintiffs contend that the purpose of the easement is to allow access to the Reservation for residential purposes only. They further allege that permitting the easement to be used to accommodate access to the casino exceeds the scope of the easement and would overburden the servient estate (i.e., the property from which the easement was created).

On February 19, 2002, the parties stipulated to the intervention of the Tribe. Both the United States and the Tribe now move to dismiss the action for lack of subject matter jurisdiction. They contend that the QTA's waiver of sovereign immunity, by its terms, does not apply to "trust or restricted Indian lands . . . ." 28 U.S.C. § 2409a(a). The Tribe also presents several alternative arguments for dismissal. Plaintiffs oppose the motions.

**3.** The QTA is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Northern Mari-*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't,* 236 F.3d 495, 499 (9th Cir.2001). The court presumes lack of jurisdiction until the plaintiff proves otherwise. *See Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989). In adjudicating a motion to dismiss for lack of jurisdiction, the court is not limited to the pleadings, and may properly consider extrinsic evidence. *See Association of Am. Med. Colleges v. United States,* 217 F.3d 770, 778 (9th Cir.2000) (citations and quotations omitted). Where the court concludes that it lacks jurisdiction, it must dismiss the action without reaching the merits of the complaint. *See High Country Resources v. F.E.R.C.,* 255 F.3d 741, 747 (9th Cir.2001).

## DISCUSSION

 As a sovereign, the United States "can be sued only to the extent that it has waived its immunity" from suit. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). "By enacting the QTA, Congress waived, with certain important exceptions, the government's sovereign immunity when the government is a party to a dispute over title to a parcel of land." *State of Alaska v. Babbitt (Albert),* 38 F.3d 1068, 1072 (9th Cir.1994).[3] The QTA provides, in relevant part, as follows:

The United States may be named as a party defendant in a civil action under

*ana Islands v. United States,* 279 F.3d 1070, 1072 (9th Cir.2002) (internal quotation and citation omitted).

this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. *This section does not apply to trust or restricted Indian lands . . . .*

28 U.S.C. § 2409a(a) (emphasis added). The party asserting jurisdiction bears the burden of establishing a waiver of the United States' sovereign immunity. *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir.1995).

■ The Government and the Tribe contend that the Government holds the easement in trust for the Tribe, and as such, the Indian lands exception bars the instant action. In order for this exception to apply, the Government need only have a "colorable" claim that it holds the easement "in trust" for the Tribe. *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir.1987); *see also Alaska v. Babbitt*, 182 F.3d 672, 674 (9th Cir.1999) ("the Indian lands exception applies only if the lands at issue are Indian lands, or at least colorably so.") The colorable claim requirement is not an onerous one. The Ninth Circuit has made it clear that "the purpose of the doctrine is to prevent judicial examination of the merits of the government's position." *Wildman*, 827 F.2d at 1309. "To the extent that the QTA allows any inquiry on the merits, that inquiry can extend no further than a determination that the government had *some rationale* for its claim." *Albert*, 38 F.3d at 1076 (emphasis added). The sovereign immunity of the Government applies regardless of whether it is "right or wrong." *Wildman*, 827 F.2d at 1309.

■ In this case, it is clear that the Government has claimed an interest in the disputed property based on its status as trustee for the Tribe-and that it has not otherwise asserted title to the land in its own behalf. As an initial matter, the Government, in its motion to dismiss, affirma-tively asserts that the easement is effectively Indian property. (Govt's Mot. at 2.) The Government also provides a statement from the United States Department of the Interior which confirms that it considers the easement to be trust assets of the Tribe. (Fry Decl. ¶¶ 4–7.) The record presented further supports the Government's position. It is uncontroverted that the Government obtained the easement from Mrs. Drake in 1965 to ensure that residents of the Reservation had a means of ingress and egress to their property. (Proschold Decl. ¶ 5.) Plaintiffs state as much in their pleadings. (First Am. Compl. ¶ 8 ("The Easement . . . is shown by contemporaneous correspondence to have been created and intended for the sole purpose of providing a private means of ingress and egress of (sic) the residents of the Rancheria").) Thus, the Court finds that under the standards set forth in *Wildman* and its progeny, the Government, at a minimum, has "some rationale" for its claim that the easement is held in trust for the Tribe.

Plaintiffs contend that the Government's "bald declaration" that the easement constitutes Indian trust property is insufficient to support application of the Indian lands exception. (Pls.' Opp'n at 5.) They point out that the easement which was recorded in 1965 makes no mention of the easement being held in trust by the Government for the benefit of the Tribe, and that it has not otherwise undertaken any effort to formally establish the easement as trust property. (*Id.* at 7.) However, the Government need not prove that the easement is held in trust for the Tribe; as noted, it needs only a colorable claim. *See Wildman*, 827 F.2d at 1309 ( "Nothing in the [QTA] or its history suggests that the United States was to be put to the burden of establishing its title when it has a colorable claim and has chosen to assert its immunity on behalf of land of which the

Government declares that it is the trustee for Indians."). Plaintiffs' arguments go to the merits of the Government's contention, which exceeds the permissible scope of judicial inquiry. *Albert,* 38 F.3d at 1076. At bottom, the Court finds that plaintiffs are barred from bringing a claim under the QTA, and as such, the action must be dismissed for lack of jurisdiction. *See Leisnoi v. United States,* 170 F.3d 1188, 1191 (9th Cir.1999) ("if the Quiet Title Act does not apply, the district court does not have jurisdiction over [plaintiff's] claim.").[4]

### CONCLUSION

The Court empathizes with plaintiffs' concerns. Mrs. Drake obviously had no idea that the easement she granted to the United States thirty-two years ago for the charitable purpose of allowing forty-five Tribe members access to their property would someday be used to facilitate traffic for a full-scale gambling casino on the Reservation. Nevertheless, the Government-rightly or wrongly-has chosen to assert a claim to the easement in trust for the Tribe. Therefore, the Court must dismiss the action for lack of jurisdiction. Accordingly,

IT IS HEREBY ORDERED THAT the United States' and the Tribe's respective motions to dismiss are GRANTED. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

---

4. Since the Court lacks jurisdiction over the action, the Court does not reach the merits of the Tribes' alternative arguments.