**Byron HO, Plaintiff,**

v.

**IKON OFFICE SOLUTIONS, INC., Defendant.**

**No. CIV. C–00–03719 WDB.**

United States District Court, N.D. California.

June 21, 2001.

Bruce J. Highman, Law Office of Highman, Highman & Ball, San Francisco, CA, for plaintiff.

Heather M. Sager, Mark S. Spring, Carlton DiSante & Freudenberger, LLP, San Francisco, CA, for defendant.

**ORDER DENYING MOTION TO REMAND AND CASE MANAGEMENT ORDER**

BRAZIL, United States Magistrate Judge.

**I. *Introduction***

Following the Ninth Circuit's ruling in *Tosco Corp. v. Communities for a Better Environment,* 236 F.3d 495 (9th Cir.2001), the court raised sua sponte the question of Ikon's corporate citizenship.

In order to determine Ikon's "citizenship," we must identify the state that is most appropriately considered Ikon's "principal place of business." [1] If Ikon's principal place of business is a state other than California the court must retain jurisdiction. If, however, we conclude that California is Ikon's principal place of business the parties are not diverse and the court must remand.

## II. Policy Underlying Diversity Statute

The primary purpose of the diversity statute is to avoid prejudice against "outsiders." [2] Corporations who have minimal contact with the public in a particular state are not likely to be recognized as "locals." The Congress that provided for diversity jurisdiction was concerned that a local jury sitting in state court might exhibit bias in favor of a "local" party who was suing an out-of-state party. Because federal courts draw from a wider jury pool, removal to federal court, so the theory goes, provides a more neutral forum. In contrast, parties who have a great deal of contact with the public in a particular state are not likely to be considered outsiders and, therefore, are not likely to be victims of discrimination by "local" jurors sitting in state court.

## III. Discussion

### A. The Applicable Law

In the Ninth Circuit the court must apply one of two tests in order to identify Ikon's "principal place of business." If any state contains a "substantial predominance" of Ikon's corporate business activities, the court applies the "place of operations" test. *Industrial Tectonics, Inc. v. Aero Alloy ["ITI"]*, 912 F.2d 1090 (9th Cir.1990). The state that substantially

predominates, if any, is Ikon's principal place of business.

In applying the substantial predominance test, the courts are to compare, one at a time, the state in issue to each other individual state in which the company is present. "[D]etermining whether a corporation's business activity substantially predominates in a given state plainly requires a comparison of that corporation's business activity in the state at issue to its business activity in other individual states. [citations omitted.] Thus, 'substantial predominance' does not require the majority of a corporation's total business activity to be located in one state, but instead, requires only that the amount of [the] corporation's business activity in one state be significantly larger than any other state in which the corporation conducts business." *Tosco*, 236 F.3d at 500.

The alternative test for identifying a corporation's principal place of business is to be used *only if,* applying the "place of operations" test as clarified in *Tosco*, the party seeking to invoke federal jurisdiction proves that "no state contains a substantial predominance of the corporation's business activities." *Tosco*, 236 F.3d at 500 *quoting ITI*, 912 F.2d at 1094. That alternative test is known as the "nerve center" test. Under it, the state in which the corporation's core executive and administrative functions are carried out is its "principal place of business."

The courts developed the "nerve center" test knowing that, under the law as fashioned by Congress, only one state could be deemed a corporation's "principal place of business"—and that there would be instances in which a corporation's activities would be spread so thoroughly and so

---

1. A corporation is a citizen of the state in which it is incorporated and the state that is its principal place of business.

2. This court enumerated various other factors appropriate to consider in *Ghaderi v. United Airlines, Inc.,* 136 F.Supp.2d 1041, 1043 (N.D.Cal.2001).

relatively evenly among many states that the only principled basis for identifying the one state that should be deemed the corporation's principal place of business would be by locating the place where the corporation chose to center ultimate power over corporate policy and administration. In other words, there would be circumstances in which mapping a corporation's operations would fail to identify a true center of corporate activity — because that activity was spread so relatively evenly and so widely among such a substantial number of states. See *ITI*, 912 F.2d at 1093 ("courts generally assign greater importance to the corporate headquarters when no state is clearly the *center* of corporate activity") (emphasis added).

Plaintiff contends that California contains a substantial predominance of Ikon's corporate business activity. Accordingly, plaintiff moves the court to deem California Ikon's principal place of business and to remand the case to the state court.

Ikon asserts that it maintains a relatively small presence in every state and that no state substantially predominates. In that setting, Ikon argues, the court must apply the nerve center test. According to Ikon, Pennsylvania constitutes its nerve center. Thus, according to Ikon, the court has diversity jurisdiction.

The law places the burden of persuasion on these issues on the party seeking to invoke the court's diversity jurisdiction. *ITI*, 912 F.2d at 1092. Ikon must prove, under the *Tosco* test, that no state contains a substantial predominance of its business activity.

**B.** *Comparison of Ikon's Presence in Various States*

■ We utilize the analysis in *Tosco* as an aide to determining whether application of the place of operations test, as we applied it in *Ghaderi*, would be consistent with Congress' intentions as reflected in the diversity jurisdiction statute and with Ninth Circuit case law. *See, Ghaderi v. United Airlines, Inc.*, 136 F.Supp.2d 1041 (N.D.Cal.2001).

In order to determine whether any state contains a "substantial predominance" of Ikon's corporate activity we consider several factors, among those "the location of [Ikon's] employees, tangible property, production activities, sources of income, and where sales take place." *Tosco*, 236 F.3d at 500 *citing ITI*, 912 F.2d at 1094.

The parties submitted evidence on a variety of factors relating to Ikon's business activities in California and in other states. We summarize that evidence below with respect to each factor.

**1.** *Employees*

As this court previously has stated, at least for some kinds of companies, the location of a corporation's employees is important evidence about where the corporation interacts with the public. *Ghaderi*, 136 F.Supp.2d at 1045.

First, we consider the number of local people Ikon employs in a given state. Ikon employs a total of 39,600 employees. It employs people in all 50 states. The evidence supports a finding that no single state contains as much as 10% of Ikon's employees. *See,* Declaration of Thomas Reiter in Support of Defendant Ikon Office Solutions' Opposition to Motion to Remand, filed June 6, 2001 ("Reiter Decl."), at ¶ 8. California maintains the largest percentage of Ikon's employees, 8.6%. Ikon employs 7.4% of its employees in Texas, 4.9% of its employees in Pennsylvania, 4.9% of its employees in New York and 4.8% of its employees in Florida.

In addition to employment relationships, we evaluate the number of Ikon's employees who interact with consumers in a particular state. The evidence Ikon has

submitted supports a finding that 3072 California employees (7.76% of Ikon's total number of employees) interact with the public. Additionally, 2,620 Texas employees (6.62% of Ikon's workforce), 1,813 New York employees (4.58% of Ikon's workforce), 1,698 Florida employees (4.29% of Ikon's workforce) and 985 Pennsylvania employees (2.49% of Ikon's workforce) interact with the public. Reiter Decl., at ¶ 9.

The evidence demonstrates that Ikon has greater contact with the public in California than in any other state—but that the corporation's contact is spread relatively evenly among many states and that the percentage of public contact that occurs in California is less then 10% of the national total.

### 2. Consumers/ (Service Provided)

Ikon's primary business activities are "sales and service." Reiter Decl. at ¶ 9. Ikon submitted evidence about the distribution of employees who interact with the public. *See,* section 1 above. Ikon does not, however, set forth evidence from which we can determine the number of local consumers to whom its employees make or solicit sales and to whom they provide service. For example, all of Ikon's employees in a particular state may interact with the public, but if they are all selling to and servicing the same five clients Ikon's public contact is minimal. Without evidence relating to the number of clients in each state we cannot meaningfully evaluate this factor.

### 3. Tangible Property

The evidence supports a finding that Ikon owns 166,662 square feet of real property. Reiter Decl. at ¶ 10. Over fifty five percent of that property is located in Georgia, 20.7% is located in Missouri and 11.7% is located in Arizona. Ikon also leases property in Pennsylvania and Illinois.

The record demonstrates that Ikon neither owns nor leases any property in California.

### 4. Sources of Income

In the last fiscal year, Ikon earned $4.4 billion in revenue. Sales and servicing in California generated 7.9% of this revenue. Texas business activities generated 5.4% of Ikon's revenue; Florida business activities generated 5.3%; Pennsylvania business activities generated 4.6%; New York business activities generated 4.1%, and Massachusetts business activities generated 3.6%. No state generated more than 10% of Ikon's annual revenue. Reiter Decl., at ¶ 11.

Ikon earned more revenue in California than any other state—but, like its employees, its revenues were widely distributed among a large number of states—no one of which accounted for even 8% of the total.

### 5. Locus of Other Commercial Transactions

No party has submitted evidence pertaining to commercial transactions other than sales and servicing.

### 6. Executive and Administrative Functions

We also examine where the corporation's executive and administrative functions take place. The evidence supports a finding that Ikon conducts its executive and administrative functions primarily in Pennsylvania. *See,* discussion section D *infra.*

### C. Ikon Has Proved That No State Contains a "Substantial Predominance" of its Business Activity

Plaintiff argues that California substantially predominates—and sets forth a numerical comparison of states based on the above factors that plaintiff contends paral-

lels the kind of comparison that this court conducted in *Ghaderi*. Motion at 3 (Ikon conducts "17–46%" more activity in California than in the next most active state). In *Ghaderi* we determined that the defendant's presence in California significantly outweighed its presence in any other state.

But this case is distinguishable from *Ghaderi* in important respects. In light of these material differences, the court finds that it is inappropriate to identify Ikon's principal place of business using the "place of operations" test.

In *Ghaderi* the parties identified only two states in which the corporate defendant (United) maintained a significant percentage of its operations: California and Illinois. Most significantly, the percentage of the corporation's total operations conducted in each of the two states was high—between 20—40%, depending on the factor in question. Stated another way, Illinois and California each separately contained a relatively large portion of United's entire business activities—and United was very visible and active in both states.

In *Ghaderi*, we concluded that when a substantial percentage of a corporation's overall business activity occurs in each of two states, such that in each of the two states it is likely that the corporation would be considered "local" and not an outsider, "the difference between the magnitude of activity in the two states need not be very large to be considered 'substantial' " as that word is used in the "substantial predominance" test. Because, under the facts in *Ghaderi*, the corporation was not likely to be considered an outsider in either of the two states in which it was so visibly present, it served all of the policy considerations that inform analysis

of diversity jurisdiction to construe the word "substantial" somewhat narrowly in that setting.

The situation in the case at bar is quite different. There are no states in which a substantial percentage of Ikon's business activity occurs. Regardless of the measure used, there is no state that can claim even 9% of Ikon's business.[3] And there are a good many states in which the level of Ikon's activity, measured by a percentage of all of the corporation's business, is only a few percentage points less than in California. So we confront a situation in which a national corporation's business activity is spread relatively evenly among a substantial number of states—so that there is no state (or no two states, as in *Ghaderi*) which clearly predominate, and no state (or two states) in which there is a substantially greater likelihood than in several others that the corporation would be viewed by jurors as "local".

It does not follow from the fact that a slightly higher percentage of all of Ikon's business activity occurs in California than in several other states that California jurors are likely to consider Ikon a local company—or more likely to consider it a local company than jurors in New York, Florida, Texas, or Pennsylvania. Because, by a considerable margin, California is the largest state, measured by population and economic activity, there often will be somewhat more activity in California than in any other individual state for truly national corporations. But it is highly unlikely that Congress intended every national corporation that does more business in California than in any other single state, by virtue of that fact alone, to be deemed a citizen of

---

**3.** We are aware that 55% if Ikon's real property is located in one state. However, in our view this factor (the location of real property) is less reflective of a corporation's public contacts than other factors. Moreover, the state

which harbors 55% of Ikon's real property is Georgia. Thus, this factor reinforces this court's conclusion that we cannot consider California the center of Ikon's corporate activities.

California for purposes of diversity jurisdiction. Such a rule would distort access to federal court in California—making it more difficult (than Congress intended) for California plaintiffs to sue out of state companies in federal court and more difficult for out of state defendants to remove cases to federal court in order to avoid the risk of local prejudice. Where, as here, the percentage of the corporation's activities in each of many states is so modest, it is especially important for the court to take into account the distorting effect (on the numbers that reflect relative activity in the many states) of the forum state's size.

Moreover, we would relegate to legal oblivion the nerve center test if, on the facts of this case, we were to follow the analytical path suggested by plaintiff.[4] We have no authority to so alter the doctrinal landscape. The cases under whose guidance we work indicate that the nerve center test remains appropriate—when, given the policies that inform analysis of diversity jurisdiction issues, use of the "place of operations" test would not reliably identify the one state that should be deemed the center of corporate activity or the one state in which a substantial predominance of the corporation's business is done.

For all these reasons, we hold that, Ikon has established that "no state contains a substantial predominance of [its] business activities." *Tosco*, 236 F.3d at 500. Accordingly, we apply the nerve center test. As a matter of law, it is the nerve center test, not the place of operations test as applied by this court in *Ghaderi*, that most appropriately identifies a corporation's principal place of business (for purposes of diversity jurisdiction) when, as here, a national corporation's business activities are spread relatively evenly over a substantial number of states and when there is no one

state in which more than 10% of that activity occurs.

### D.  *Ikon's Nerve Center is Pennsylvania*

█ According to Ikon, under the nerve center test, its principle place of business is Pennsylvania. Ikon's headquarters is located in Pennsylvania. All corporate officers work out of that office. Ikon's corporate policies and procedures arise from its headquarters. *See*, Reiter Decl. at ¶¶ 4, 5 & 7.

Plaintiff suggests that Pennsylvania does not constitute Ikon's nerve center. More specifically, plaintiff asserts that management employees outside of Pennsylvania "have responsibility for corporate management and policy making." Reply at 3. In support of his position plaintiff cites the deposition testimony of Amy Turner, a California employee. Ms. Turner indicates that, as a member of various corporate committees, she has contributed to the development of certain corporate policies and procedures.

Ms. Turner's testimony indicates that she has helped to establish corporate procedures. However, Ms. Turner's testimony does not overcome evidence that Pennsylvania is Ikon's nerve center. First, she helped to establish *operational* procedures. The evidence does not support an inference that she helped to establish corporate administrative policies or larger business strategies. Second, she did so only as one member of a committee comprised of managers from all over the country. Third, her direct supervisor works in Pennsylvania. Fourth, she indicates that someone "in corporate" provided input for these procedures and "policies" and that someone from "corporate" had to approve

---

4. Plaintiff urges us simply to determine by what percentage business activity in California

nia exceeds business activity in each other state.

them before they could be implemented. *See,* Turner Depo., at 39, 41–42, 46, 48–51.

Accordingly, the court FINDS that Ikon has submitted evidence that would support a finding that Pennsylvania constitutes Ikon's principal place of business under the nerve center test.

## IV. *Case Management Orders*

Following the hearing on plaintiff's Motion to Remand the court conducted a case management conference. The court's pre-trial scheduling orders will be the subject of a separate written order.

The court VACATES the status conference scheduled for **June 28, 2001,** at 1:00 p.m.

## V. *Conclusion*

For the reasons described above, plaintiff and Ikon are diverse. Plaintiff's Motion to Remand is DENIED.

IT IS SO ORDERED.