Oscar ARELLANO, Plaintiff,

v.

**HOME DEPOT U.S.A., INC.,
et al. Defendants.**

**No. CIV.02–CV–2207–J(AJB).**

United States District Court,
S.D. California.

Jan. 21, 2003.

Veronica M Aguilar, Donald R Holben and Associates, San Diego, CA, for Oscar Arellano, an Individual, plaintiff.

Robert E King, Payne and Fears, Irvine, CA, for Home Depot USA Inc, Andrew Calica, in his capacity as Store Manager and in an individual capacity, Does, 1 through 20 inclusive, defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

## ORDER DENYING REQUESTS FOR SANCTIONS

JONES, District Judge.

This matter comes before the court on plaintiff's motion to remand. For the reasons set forth below, plaintiff's motion is DENIED. In addition, both parties' requests for sanctions are DENIED.

### BACKGROUND

On January 22, 2002, plaintiff Oscar Arellano, an employee of defendant Home Depot U.S.A., Inc. ("Home Depot"), urinated in the bushes behind the Home Depot store. Arellano was observed by a coworker, who reported the incident to management. The next day, Arellano provided Home Depot management with a note from his doctor explaining that he had an enlarged prostate causing him to urinate frequently. Arellano was suspended for three days and received a written reprimand from the store manager, Andrew Calica. Shortly thereafter, Home Depot terminated Arellano for inappropriate con-

duct. Mem. P. & A. Supp. Mot. Remand ("P & A") at 2.

On August 7, 2002, Arellano commenced this action against Home Depot and Calica in California Superior Court, raising claims under the California Fair Employment and Practices Act, Cal. Gov't Code §§ 12940 et. seq., and common law. *See* Compl. at 4–12. Arellano and Calica are citizens of California, and Home Depot is a Delaware corporation. Arellano's complaint alleges discrimination based upon his "medical disability," wrongful termination, breach of implied-in-fact covenant of continued employment, breach of implied covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress. P & A at 2–3. Arellano requests damages in the amount of at least $25,000, the exact amount to be determined at trial. *See* P & A at 7.

In a letter to defendants dated November 4, 2002, Arellano offered to settle the case for $70,000 and immediate reinstatement, or, alternatively, $95,000 and the "cleansing" of his file. *See* Def.'s Opp'n Pl.'s Mot. Remand ("Opp'n"), Decl. of Robert E. King ("King Decl."), ¶ 3, Ex. B. On November 5, 2002, plaintiff dismissed Calica as a defendant, leaving Home Depot as the sole defendant. Opp'n at 1. Following the dismissal of Calica, Home Depot removed the case to this court, claiming this court has original jurisdiction over the case based on diversity of citizenship under 28 U.S.C. §§ 1332 and 1441(b). Arellano has moved to remand this matter to state court.

## DISCUSSION

### A. *Diversity of Citizenship*

■ Arellano argues remand is appropriate because Home Depot has failed to establish that the citizenship of the parties is completely diverse and that the amount in controversy exceeds $75,000. Diversity jurisdiction exists in federal court if the plaintiff and the defendant(s) are citizens of different states, and the amount of controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Federal jurisdiction must "be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Here, Home Depot, the party seeking to invoke federal jurisdiction, bears the burden of establishing jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy ["ITI"]*, 912 F.2d 1090, 1092 (9th Cir.1990). The primary purpose of diversity jurisdiction is to "avoid prejudice against 'outsiders.'" *Ho v. Ikon Office Solutions, Inc.*, 143 F.Supp.2d 1163, 1164 (N.D.Cal.2001).

If a party is a corporation, it is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). In the present case, it is undisputed that Home Depot is a citizen of Delaware, its state of incorporation. However, the parties dispute Home Depot's principal place of business.

■ In determining a corporation's principal place of business for the purposes of citizenship, courts utilize one of two tests. *ITI*, 912 F.2d at 1092. Under the "place of operations" test, a corporation's principal place of business is the state which "contains a substantial predominance of corporate operations." *Id.* This test is appropriate "where a corporation conducts 'substantially all' of its operations in one state and its headquarters are located in another state." *Id.* at 1093. Additionally, "substantial predominance" in a particular state exists if "the amount of [the] corporation's business activity in one state [is] significantly larger than any other state in which the corporation conducts business." *Tosco Corp. v. Communities For a Better Environment*, 236 F.3d 495, 500 (9th Cir.2001). Courts consider

several factors to determine whether a particular state contains a "substantial predominance," including "the location of employees, tangible property, production activities, sources of income, and where sales take place." *Id.* at 500. This inquiry "plainly requires a comparison of that corporation's business activity in the state at issue to its business activity in other individual states." *Id.* The Ninth Circuit has held that the "place of operations test" should apply unless the corporation demonstrates that its activities do not substantially predominate in any one state. *Id.*

The second test used to determine a corporation's principal place of business is the "nerve center" test, which focuses on the location of the corporation's executive and administrative functions. *See ITI,* 912 F.2d at 1092. The "nerve center" test is applicable "where a corporation conducts business in many states, and does not conduct a substantial predominance of its business in any single state." *Id.* at 1093. This test is generally utilized when a corporation's activities are far flung and operations are conducted in many states. *See Lurie Co. v. Loew's San Francisco Hotel Corp.,* 315 F.Supp. 405, 412 (N.D.Cal.1970).

In the present case, the parties dispute which of these tests is appropriate for determining the citizenship of Home Depot. Arellano urges the court to apply the "place of operations" test, and argues that under that test, California has a substantial predominance of Home Depot's corporate activity. Conversely, Home Depot claims its corporate activities do not substantially predominate in any state, such that the "nerve center" test is appropriate. Under the "nerve center test," Home Depot argues, its principal place of business is Georgia, where most of its executive and administrative functions occur.

In determining the appropriate test, the key issue is whether Home Depot's business activities substantially pre-

dominate in any one state. As noted above, one factor courts consider in determining "substantial predominance" is the number of employees in each state. According to Home Depot's evidence, its U.S. workforce consists of approximately 260,743 people in forty-nine states, with 15.1% of its total workforce in California, 9.3% in Florida, 8% in Georgia, 6.9% in New York, and 6.9% in Texas. *See* Opp'n, Decl. of Dorothy A. Perkins, ¶ 3.

In *Ghaderi v. United Airlines,* 136 F.Supp.2d 1041, 1045 (N.D.Cal.2001), California was found to have a substantial predominance of the defendant's business activity where the defendant employed 31.6% of its workforce in California and 23% in Illinois. The *Ghaderi* court concluded that the difference between two states each containing a large percentage of overall business activity "need not be very large to be considered 'substantial.'" 136 F.Supp.2d at 1047.

By contrast, in *Ho,* the court concluded that no state contained a substantial predominance of business activity, where the defendant corporation conducted business in all fifty states and had 8.6% of its employees in California, 7.4% in Texas, 4.9% in Pennsylvania, 4.9% in New York, and 4.8% in Florida. *See* 143 F.Supp.2d. at 1165. Although California's workforce exceeded that of every other state, the court held that the corporation's contact was "spread relatively evenly." *Id.* at 1166. The court distinguished *Ghaderi,* noting that the parties in *Ghaderi* identified only two states, both of which contained substantial business operations exceeding 20% of the total amount of business activity. *Ho,* 143 F.Supp.2d at 1167.

The court concludes that the present case is more analogous to *Ho.* Home Depot has stores in forty-nine of the fifty states with no state containing more than 15.1%

of its workforce. Although more Home Depot employees are located in California than in any other state, Florida contains 9.3% of Home Depot's total workforce, only 5.8% less than California.[1] Additionally, the percentage of overall employees in Georgia, New York, and Texas falls closely behind Florida. As in *Ho*, the court finds that Home Depot's "contact is spread relatively evenly among many states." 143 F.Supp.2d at 1166. Although California has more Home Depot employees and stores, the margin of difference is not significant enough for a corporation that conducts business in forty-nine of the fifty states. Because California is the state with the largest population, business activity on a national scale can be expected to be greater in California. *See Ho*, 143 F.Supp.2d at 1167–68. "[I]t is highly unlikely that Congress intended every national corporation that does more business in California than in any other single state, by virtue of that fact alone, to be deemed a citizen of California for purposes of diversity jurisdiction." *Id.* As observed in *Ho*, where "the percentage of the corporation's activities in each of many states is so modest," the "distorting effect ... of the forum state's size" must be taken into consideration. *Id.* at 1168. Applying this logic to the present case, a comparison of Home Depot's workforce in each state does not establish a substantial predominance in California.

■ Another factor courts consider in determining "substantial predominance" is the location of the defendant's tangible property. Home Depot has submitted evidence indicating that as of January 1, 2002, the approximate fair market value of its taxable tangible property was $629 million in Georgia, $604 million in Texas, and $408 million in California. Opp'n, Decl. of Randy Ellison, ¶ 3. Thus, the distribution of Home Depot's tangible property also weighs against a finding that California contains a substantial predominance of Home Depot's corporate activity.

■ A third factor considered by the *Tosco* court in determining "substantial predominance" was the location of the defendant's executive and administrative functions. *See Tosco*, 236 F.3d at 502. According to Home Depot's evidence, it has maintained its executive offices in Atlanta, Georgia since 1978, including its finance, accounting, purchasing, treasury, marketing, training, human resources, information systems, internal audit, and legal departments. Opp'n, Decl. of Dorothy A. Perkins, ¶ 5. Again, this factor weighs against finding that California contains a substantial predominance of Home Depot's business activities.

Arellano relies heavily on the holding in *Tosco*, but that case is distinguishable from the present case. In *Tosco*, the court held that California contained a substantial predominance of the plaintiff's business activities, where the corporation had 21% of its total workforce in California, received 40% of its total refining capacity from California, and had 37% of its retail locations in California. *Tosco*, 236 F.3d at 500–01. In arguing that California was not its principal place of business, Tosco erroneously

---

1. Although the percentage increase from 9.3% to 15.1% is approximately 62%, this fact does not take into account the population difference between California and Florida. According to the U.S. Census Bureau, in 2000, California had a population of 33,871,648 people, while Florida had a population of only 15,982,378 people. *See* California Quick Facts from the U.S. Census Bureau, *at* http://quickfacts.census.gov/qfd/states/06000.html; Florida Quick Facts from the U.S. Bureau, *at* http://quickfacts.census.gov/qfd/states/12000.html. Based upon these figures, .15% of Florida's population works for Home Depot, while only .12% of

compared its activities in California to its activities in the entire United States. Here, conversely, Home Depot provided the court with a comparison between California and other individual states. More importantly, the proportion of Home Depot's business activities in California is much less than that of the corporation in *Tosco.*

Based on the foregoing, the court concludes that no state contains a substantial predominance of Home Depot's business activities. Accordingly, the "nerve center" test is appropriate for determining Home Depot's principal place of business. As discussed above, Home Depot's undisputed evidence establishes that the majority of its executive and administrative functions occur in Georgia.[2] Thus, Home Depot is a citizen of Delaware and Georgia, and complete diversity of citizenship exists between it and Arellano, a California citizen.

**B.  *Amount in Controversy***

Arellano contends Home Depot has not met its burden of establishing that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 839 (9th Cir. 2002). If damages are not clearly specified in the pleadings, the court may rely upon a variety of documents, including written settlement demands. *See Del Real v. Healthsouth Corp.,* 171 F.Supp.2d 1041, 1043 (D.Ariz.2001). Settlement letters are "relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn,* 281 F.3d at 840. In *Cohn,* where the court held that removal was proper, the court relied solely upon a settlement letter drafted by the plaintiff demanding

$100,000 in compensation to determine that the amount of controversy did in fact exceed the requisite $75,000. *Id.* at 839–40.

Here, Arellano's complaint does not specify the amount sought; it says only that he seeks at least $25,000. Thus, Home Depot relies exclusively upon Arellano's demand letter to establish the amount in controversy. As noted above, the letter demanded either $70,000 and immediate reinstatement, or $95,000 and the "cleansing" of his file. *See* King Decl., ¶ 3, Ex. B. Although Arellano argues otherwise, the Ninth Circuit has clearly established that a court may rely solely upon a settlement letter in determining the amount in controversy if the letter appears to reflect a reasonable estimate of the plaintiff's claim. *Cohn,* 281 F.3d at 839–40. Here, Arellano has offered no argument or evidence that the figures in the settlement letter are inflated or otherwise unreliable. The court therefore concludes that Home Depot has met its burden of establishing that the amount in controversy exceeds $75,000.

**C.  *Requests for Sanctions***

Arellano has requested that the court him award attorney's fees and costs incurred in bringing this motion. *See* 28 U.S.C. § 1447(c). However, because the court concludes that Home Depot's removal was proper, this request is denied.

Home Depot responds that Arellano's alleged misconduct in bringing this motion warrants sanctions under Rule 11 of the Federal Rules of Civil Procedure. Rule 11, however, specifically requires that a request for sanctions be initiated by a

---

California's population works for Home Depot.

**2.** Other federal courts have also identified Home Depot as a citizen of Georgia. *See, e.g., Michalski v. Home Depot, Inc.,* 225 F.3d 113,

115 (2d Cir.2000); *Murgo v. Home Depot USA, Inc.,* 190 F.Supp.2d 248, 249 (D.Mass. 2002); *McCloud Constr., Inc. v. Home Depot USA, Inc.,* 149 F.Supp.2d 695, 696 (E.D.Wis. 2001).

motion "made separately from other motions or requests." Fed.R.Civ.P. 11(c)(1)(A). Home Depot's request for sanctions was contained in its opposition to plaintiff's motion to remand, and is therefore procedurally defective. *See Fat T, Inc. v. Aloha Tower Assoc.*, 172 F.R.D. 411, 415 (D.Haw.1996) (holding that a franchisor could not obtain Rule 11 sanctions against lessors where it requested sanctions in its opposition to lessor's motion to dismiss). More importantly, Arellano's motion to remand was not so patently frivolous as to warrant sanctions. *See Montrose Chem. Corp. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1133–34 (9th Cir.1997). Accordingly, Home Depot's request for sanctions is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand and both parties' requests for sanctions are **DENIED**.

**IT IS SO ORDERED.**