Cindy G. **ALBINO,** Plaintiff,

v.

**STANDARD INSURANCE CO.;**
**Does 1–50, Defendant.**

**No. CV 04–4196 GPS(SHX).**

United States District Court,
C.D. California.

Dec. 27, 2004.

Robert K. Scott, Law Offices of Robert K. Scott, Irvine, Douglas K. deVries, deVries Law Firm, Sacramento, CA, for plaintiff.

Linda M. Lawson, Simon Manoucherian, Meserve, Mumper & Hughes LLP, Los Angeles, CA, for defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

SCHIAVELLI, District Judge.

Pending before this Court is Plaintiff's Motion to Remand this case to state court for lack of subject matter jurisdiction. Plaintiff filed her motion on August 2. Defendant, Standard Insurance Co., filed its opposition on August 30. Plaintiff filed a reply on September 3. On October 8, the Court asked the parties to brief the additional issue of whether the amount in controversy was met in this diversity action. Defendant filed its brief on October 18. Plaintiff did not file a brief.

For the reasons stated below, the Court **DENIES** Plaintiff's Motion to Remand this action.

## I. BACKGROUND

Plaintiff filed her Complaint in the Superior Court for the State of California, County of Los Angeles, on May 7, 2004, asserting claims for breach of contract and breach of the duty of good faith and fair dealing. Defendant removed this action to this Court on June 14, 2004, alleging that it first received a copy of the Summons and Complaint on May 13, 2004.

Defendant based its removal on diversity jurisdiction, contending that Plaintiff is a resident and citizen of California and that Defendant is an Oregon corporation with its principal place of business in Portland, Oregon.

On August 2, Plaintiff filed the pending Motion to Remand, arguing that this Court lacks subject matter jurisdiction because removal was improper. Plaintiff brought this motion after learning that another judge ruled in a separate case pending in this District, that Defendant's primary place of business is California. Plaintiff argues that this Court should come to a similar conclusion based on the fact that the largest share of Defendant's premiums is generated from California (13.72 percent), while premiums from Oregon constitute the third largest share (6.64 percent).[1] Plaintiff thus argues that there is not complete diversity in this case and accordingly the case should be remanded to state court.

In its opposition filed on August 30, Defendant contends its principal place of business is in Oregon even though Oregon is not the primary source of its premium revenues. Defendant points out that 78.63 percent of its employees are in Oregon compared to only 2.5 percent in California. Defendant also alleges that over 82 percent of its real property and 84.87 percent of its other property is located in Oregon. Only 6 percent of its real property and 2.83 percent of its other property is located in California.

While Plaintiff's Motion to Remand was pending, the Court requested additional briefing on whether the amount in controversy was met. In response to the Court's request, Defendant filed a brief on this issue. Defendant contends that the amount in controversy is met in this case

---

1. Defendant presented revised figures for premium revenues in its opposition to Plaintiff's motion, showing that 14.83 percent of premiums are generated from California and 12.22 percent from Oregon. The Court finds that this difference in the parties' numbers is not material to the analysis.

because Plaintiff is suing for: (1) past due benefits; (2) future benefits; (3) emotional damages; (4) attorneys' fees; and (5) punitive damages. Defendant argues that the total of these damages will exceed the $75,000 jurisdictional threshold. In the alternative, Defendant requests that discovery be permitted on the issue of damages. In light of the Court's finding that Defendant has demonstrated that the amount in controversy exceeds $75,000, the Court denies Defendant's request for discovery as moot.

## II. ANALYSIS

Diversity jurisdiction in federal court requires both diversity of citizenship and an amount in controversy that is in excess of $75,000. 28 U.S.C. § 1332. Thus, in order for this Court to have jurisdiction, Defendant must prevail on both issues. The burden of proving both of these requirements lies with the Defendant. *Fenton v. Freedman*, 748 F.2d 1358, 1359 n. 1 (9th Cir.1984).

### A. Diversity of Citizenship

■ A corporation has dual citizenship for diversity purposes. *See* 28 U.S.C. § 1332(c). A corporation is a citizen both of the state where it was incorporated and the state where it has its primary place of business. *Id.* The question in this case is the location of Defendant's primary place of business.

■ The Ninth Circuit applies one of two tests to determine a corporation's primary place of business: (1) the place of operations test; or (2) the nerve center test. In order to know which test to apply, a court must first determine if any state contains a "substantial predominance" of the corporation's business activities. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1093 (9th Cir.1990). If so, then the court should apply the place of operations test. *See id.* The nerve center test should only be applied "if no state contains a substantial predominance of the corporation's business activities." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 500 (9th Cir.2001) (quoting *Indus. Tectonics*, 912 F.2d at 1094).

■ Accordingly, this Court must first determine whether any state contains a "substantial predominance" of Defendant's business activities. "Substantial predominance" does not require that the majority of a corporation's business activity be in a single state. *Id.* Instead, this standard requires that "the amount of the corporation's business activity in one state be significantly larger than any other state in which the corporation conducts business." *Id.* However, if a majority of the corporation's business activity does occur in a single state, that will be deemed its primary place of business. *Indus. Tectonics*, 912 F.2d at 1094.

The Ninth Circuit has indicated that "the location of employees, tangible property, and production activities are relevant factors. Additional relevant factors include the locations where income is earned, purchases are made, and sales take place." *Id.*

■ These factors heavily favor Oregon as containing a "substantial predominance" of Defendant's business activities. Defendant represents that 78.63 percent of its employees are in Oregon, with Maine being the next largest location with 5.4 percent of the employees. Over 82 percent of Defendant's real property and 84.87 percent of its other property is located in Oregon. The next closest concentrations of Defendant's property are Washington, with 8 percent of the real property, and Maine, with 2.58 percent of the other property.

Plaintiff notes, however, that California is the location of the majority of Defendant's income and sales. Defendant earns 13.72 percent of its premium revenues in California as compared to 6.64 percent generated from Oregon. Other District Courts in California have suggested that gross revenues are not an accurate measure of business activities in a given state. *See Arellano v. Home Depot, U.S.A., Inc.,* 245 F.Supp.2d 1102, 1107 (S.D.Cal.2003); *Ho v. Ikon Office Solutions, Inc.,* 143 F.Supp.2d 1163, 1167–68 (N.D.Cal.2001). As the Northern District of California has persuasively noted, because California has the largest population of any state in the union, it will naturally have more gross sales and more customers than other states. *Ho,* 143 F.Supp.2d at 1167. The *Arellano* court suggested that a more accurate measure would be revenue per capita based on the state population. *Arellano,* 245 F.Supp.2d at 1107 n. 1. Although California contains more than twice the premium revenues of Oregon, it also has nearly ten times the population.[2] Thus, in per capita terms, California is actually a less significant source of revenue for Defendant.

It therefore appears that the majority of Defendant's business activity is contained in Oregon. Following the Ninth Circuit's opinion in *Integrated Tectonics,* Oregon is Defendant's primary place of business. Accordingly, diversity of citizenship exists in this case.

### B.    Amount in Controversy

█ The more difficult question in the present case is whether the amount in controversy requirement is met. Diversity jurisdiction requires that the amount in controversy exceed $75,000. 28 U.S.C. § 1332. As indicated, *supra,* Defendant bears the burden of proving the propriety of removal. *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996). The Ninth Circuit has advised that courts should err in favor of rejecting federal jurisdiction if there is doubt whether removal is proper. *Id.* If the amount of damages sought by a plaintiff is unclear, the defendant must prove that the jurisdictional amount is in controversy by a preponderance of the evidence. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 403 (9th Cir.1996). Defendant seeks to meet its burden in this case by adding the amounts Plaintiff seeks for: (1) past due benefits; (2) future benefits; (3) emotional damages; (4) attorneys' fees; and (5) punitive damages. For the reasons below, only past due benefits and future benefits must be considered to resolve the present jurisdictional question.

### 1.    Past Due Benefits

The benefits due at the time this action was filed are the direct damages sought in this suit. Although Plaintiff did not specify this amount, Defendant calculates that it allegedly owed $2,002.26 to Plaintiff at time the removal was filed. Def.'s Brief RE Amount in Controversy 4:11–12. This amount is far below the jurisdictional requirement so the remaining alleged damages must be considered.

### 2.    Future Benefits

Defendant calculates that future benefits in this case total $504,569.52 or $256,422.64 if reduced to present value. *Id.* at 5: 7–9; n:2. This would satisfy the jurisdictional limit. However, but whether future benefits may be included in the amount in

---

2. California's estimated population in 2003 was 35,484,453. CALIFORNIA QUICK FACTS from the U.S. Census Bureau, *at* http://quickfacts.census.gov/qfd/states/06000.html. Oregon's estimated population in 2003 was 3,559,596. *Id.* at http://quickfacts.census.gov/qfd/states/41000.html.

controversy calculation is a doctrinally difficult question. In this case, Plaintiff has pled both contractual and tortious theories of recovery.

### a. Contractual Theory

■ Federal case law considering whether or not future benefits can be considered in the jurisdictional calculation have only considered contractual theories. These cases suggest that whether future benefits can be considered depends on the nature of the case. On this issue, cases are divided into two main groups: (1) cases where the controversy is the extent of coverage; and (2) cases where the very validity of the insurance contract is challenged. Joseph Edwards, Annotation, *Determination of requisite amount in controversy in diversity Action in Federal District Court involving liability under, or validity of, disability insurance*, 1972 WL 31791, 11 A.L.R. Fed. 120, § 2 n. 6 (2004) (citing *Jefferson v. Liverpool & London & Globe Ins. Co.*, 167 F.Supp. 389, 391–92 (S.D.Cal.1958)).

In the first group of cases, courts have generally held that potential future benefits cannot be considered in calculating the amount in controversy. *Id.* at § 4; *see e.g. New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971 (1936); *Beaman v. Pacific Mut. Life Ins. Co.*, 369 F.2d 653, 655 (4th Cir.1966) (stating "[t]he decided cases in the Supreme Court of the United States and in this and other circuits are clear that in a[n insurance disability dispute], the measure of recovery and, hence, the amount in controversy, is only the aggregate value of past benefits allegedly wrongly withheld."); *Commercial Cas. Ins. Co. v. Fowles*, 154 F.2d 884, 886 (9th Cir.1946) (holding that "no right

to such 'future benefits' existed at the time the action was commenced...[and t]herefore [it could not be included in the amount in controversy]."); *see also Sanchez*, 102 F.3d at 405–06 (holding that the amount in controversy requirement cannot be fulfilled by the mere possibility of recovery above the jurisdictional amount).

In contrast, the second group of cases, where the validity of the contract is at issue, the aggregate of future benefits can be considered. Joseph Edwards, Annotation, *supra*, at § 3; *see e.g. New York Life Ins. Co. v. Kaufman*, 78 F.2d 398 (9th Cir.1935) *cert. den.* 296 U.S. 626, 56 S.Ct. 149, 80 L.Ed. 445 (1935) (finding that disability benefits which had not yet accrued when the suit was filed could be included in the amount in controversy calculation).

■ The present case falls into the former category because the controversy centers on is whether Plaintiff is disabled, not whether Plaintiff's contract with Defendant is valid. In light of this authority, the Court is not persuaded that future benefits should be included in the amount in controversy calculation under Plaintiff's contractual theory.

### b. Tortious Theory

■ Defendant correctly points out that Plaintiff may be entitled to future benefits under California insurance law. Plaintiff may only recover future benefits if she prevails on a tortious theory for the breach of the implied covenant of good faith and fair dealing. *See Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 824 n. 7, 169 Cal.Rptr. 691, 620 P.2d 141 (1979) (creating the right to recover future benefits on a tortious theory).[3] However, this is

---

**3.** A claim for the breach of the implied covenant of good faith and fair dealing may also be pursued under a contractual theory. *See*

*Pistorius v. Prudential Ins. Co. of Am.*, 123 Cal.App.3d 541, 550–51, 176 Cal.Rptr. 660 (1981). However, future benefits are not

merely the first step in the inquiry. The Court must next consider whether potential future benefits can be included in the amount in controversy calculation. This appears to be an issue of first impression.

In order to properly apply an *Egan* theory of recovery to the amount in controversy calculation, the Court must first consider the manner in which future benefits are awarded under such a theory. The California Court of Appeals reviewed an early application of *Egan* in *Pistorius v. Prudential Ins. Co. of Am.*, 123 Cal.App.3d 541, 176 Cal.Rptr. 660 (1981). In *Pistorius*, a trial court instructed a jury that if it found that an insurer breached its covenant of good faith and fair dealing they could award the present value of all future policy benefits as part of the compensatory damages. *Id.* at 550–51, 176 Cal.Rptr. 660. The insurer challenged this instruction and the jury's inclusion of the present value of future policy benefits in the compensatory damage award. *Id.* at 550, 176 Cal.Rptr. 660. The Court of Appeals agreed that such damages were inappropriate for a contractual breach of the covenant of good faith and fair dealing. *Id.* at 551, 176 Cal.Rptr. 660. The court held, however, that such an award could be recovered in a tort cause of action for breach of the implied covenant of good faith and fair dealing under *Egan. Id.* The court thus affirmed the award of future benefits as a single payment. *See id.*

 The *Pistorius* decision supports a finding that the amount in controversy is met in this case because Plaintiff's future policy benefits could be awarded as compensatory damages under her claim for tortious breach of the covenant of good faith and fair dealing. Compensatory damages are properly considered by the Court when determining the amount in available under such a theory. *Id.* at 551, 176

controversy. *See e.g. McCaa v. Mass. Mut. Life Ins. Co.*, 330 F.Supp.2d 1143, 1149 (D.Nev.2004). Defendant calculates that the present value of future benefits in this case is $256,442.64. Def.'s Brief RE Amount in Controversy 5: n. 2. Thus, the Court is satisfied that Defendant has met its burden on the issue of amount in controversy.

### III. CONCLUSION

For the foregoing reasons, the Court thus **DENIES** Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**